**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**MARGARET WILSON**                                                  **PLAINTIFF**

**V.**                                           **CIVIL ACTION NO. 3:16CV71 DPJ-LRA**

**NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY[1]**                      **DEFENDANT**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Margaret Wilson appeals the final decision denying her applications for a period of disability and disability insurance benefits ("DIB"), and social security income ("SSI). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

In January 2012, Plaintiff filed initial applications for SSI and DIB alleging a disability onset date of October 13, 2010, due to attention deficit disorder, depression, two herniated discs, arthritis, diabetes, irritable bowel syndrome, anxiety, neuropathy, and psychosis. She was 47 years old on her alleged onset date, and has a GED with past relevant work experience as a housekeeper, a shuttle-bus driver and an assembly worker. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had not established a disability within

---

[1] Nancy Berryhill is substituted for her predecessor, Carolyn W. Colvin, as Acting Commissioner of Social Security. Fed. R. Civ. P. 25(d).

the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that although Plaintiff's degenerative disc disease, affective disorder, cannabis abuse, personality disorder, diabetes mellitus, essential hypertension, obesity, anxiety disorder, osteoarthritis, pain disorder, and peripheral neuropathy were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work with the following limitations:

> No climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; no exposure to heights or hazards; limited to simple routine tasks; occasional interaction with the public; and occasional change in routine work setting.[3]

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform her past relevant work as an assembly worker. Alternatively, the ALJ found at step five that she could perform work as an office helper, fast-food prep/salad bar attendant, and storage rental clerk.

---

[2] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[3] ECF No. 8, p. 18.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff argues that the ALJ committed numerous errors, and urges this Court to reverse the decision and find her disabled as of her alleged onset date. Plaintiff claims specifically that the ALJ: (1) failed to properly consider the functional limitations caused by her severe impairments; (2) failed to properly evaluate her credibility; (3) erred in finding that she could perform her past work; (4) and, erred in finding that she could perform other work in the national economy.

**1.**

As her first point of error, Plaintiff asserts the ALJ failed to adequately consider the mental and reaching/handling limitations caused by her severe impairments. With

3

respect to her mental impairments, she alleges that the ALJ failed to thoroughly analyze her limitations in maintaining social functioning; maintaining concentration, persistence, or pace; episodes of decompensation; and, daily activities "by itemizing various functions contained in [these] broad categories." She specifically points to the ALJ's alleged failure to evaluate her "ability to initiate and participate in activities independent of supervision or direction."[4]

However, Plaintiff does not direct the Court to evidence establishing such limitations. The medical evidence cited by the ALJ in her residual functional capacity assessment indicates that Consulting Examiner, Dr. Jan Boggs, noted that "[d]espite her mood and pain problems, Ms. Wilson is able to follow directions and sustain tasks (cognitively)." Other evidence revealed that she could manage her own funds; maintain personal hygiene and grooming; attend to light housekeeping chores; and, care for her foster son part-time, all without any reported supervision or direction. That she was reportedly unable "to do much around the house" without family assistance was attributed to her physical, not mental limitations. Mental health records revealing mostly normal examinations indicated that despite substance abuse, she was stable when compliant with her medication.[5]

In assessing the degree to which mental impairments impacted her ability to work, the ALJ also made the following observations:

---

[4] ECF No. 11, pp. 6-7.

[5] ECF No. 8, pp. 23, 362-65.

> Medical providers who examined and/or treated the claimant for physical complaints documented normal psychiatric review of systems and normal mental status findings on many occasions, which suggests symptoms may have occurred sporadically and/or may not be as limiting as alleged. The record contains numerous inconsistencies undermining credibility and little objective or persuasive evidence corroborating subjective complaints of mental illness.
>
> . . . .
>
> With regard to daily activities, the claimant has a foster child who has been in her custody throughout the adjudication period. This fact suggests child protective service agencies find her physically and mentally capable of parenting. She said the child stays with her just part time since her divorce. Dr. Boggs notes claimant did not say much about the care of this child, who was 8 at the time of the consultative exam. The undersigned notes she apparently did not mention cannabis abuse and denied alcohol or drug problems at the consultative exam; however, mental health records document cannabis abuse as a secondary diagnosis with positive urine drug screen and "still smoking THC" at multiple visits.[6]

Plaintiff does not contend that it was error for the ALJ to consider her substance abuse or the fact that she has a foster child in her analysis. She does not address either issue on appeal. Given the evidence, it was not unreasonable for the ALJ to consider these factors in assessing Plaintiff's mental residual functional capacity.

The ALJ's conclusion that Plaintiff had moderate difficulties with concentration, persistence or pace, social functioning, and daily activities is based on a reasonable interpretation of the evidence. To the extent these difficulties produced functional limitations, the ALJ limited Plaintiff to simple routine tasks, occasional interaction with the public, and occasional change in routine work settings. Substantial evidence supports

---

[6] ECF No. 8, pp., 22-23.

the ALJ's assessment and Plaintiff does not point to evidence establishing mental limitations beyond those assigned.

The same holds true for Plaintiff's assertion that the ALJ failed to include reaching and handing limitations in her residual functional capacity assessment, despite finding that osteoarthritis, degenerative disc disease, and peripheral neuropathy were severe impairments at step two. Plaintiff testified that she experiences numbness and a burning pain on a daily basis in her hands, causing her fingers to lock up. She identified hand pain as one of the primary reasons for her inability to work.

It is not the presence of a medical condition that establishes a disability, but rather its limitations. *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments). While medical records show Plaintiff reported hand and shoulder pain, no treating or examining physician has ever imposed work restrictions that would preclude reaching or handling. Aside from her own testimony and complaints, there is no support in the record upon which to base a finding that Plaintiff's limitations include reaching and handling. As Respondent argues, Plaintiff's limitations appear to be largely self-imposed.

Consulting Examiner, Dr. Anthony Fouts, noted in a report in July 2012, that Plaintiff complained that she could not use her dominant left hand due to pain in her left wrist and shoulder. Dr. Fouts assessed Plaintiff with mild to moderate arthritis of the left shoulder and wrist. Upon examination, there was tenderness with palpitation of the left wrist and shoulder. Notwithstanding, Plaintiff had full range of motion in her upper

extremities.  Her fine and gross manipulation were intact and she had full grip strength.  In addition, in the only physical residual functional capacity assessment of record, Dr. Robert Culpepper opined that Plaintiff's functional limitations would restrict her to performing light exertional work with no mention of reaching or handling limitations.  A subsequent Physical Work Performance Evaluation performed by Rush Rehabilitation Services in February 2013 further established that Plaintiff could perform light work for an eight-hour day, 40 hours a week.  As noted by the ALJ, the examiners observed that Plaintiff "*did not demonstrate any pain behaviors* during the testing," and even "improved on one or more of the endurance tasks with no apparent reason for the improvement.  It was also noted *the claimant exhibited 44 percent self-limiting behavior* on the mobility tasks."  But no reaching or handling limitations were noted during the evaluation.  Given the evidence, it was not unreasonable for the ALJ to find that the claimant's testimony was outweighed by other credible evidence and to exclude reaching and handling limitations from her residual functional capacity assessment.[7]

The ALJ's residual functional capacity determination limited Plaintiff to a reduced range of light work.  Absent evidence that Plaintiff's impairments impact her ability to perform work-related activities beyond the limitations indicated in the ALJ's assessment, Plaintiff's first assignment of error is without merit.

---

[7] ECF No. 8, pp. 386-88, 390-98, 404-15 (emphasis added).

**2.**

As her next point of error, Plaintiff asserts the ALJ's determination that her subjective complaints of pain were inconsistent with her daily activities and objective medical evidence is inherently flawed. She notes that examining and state agency physicians diagnosed her with pain disorder, chronic pain syndrome, and somatoform disorder, -- a psychiatric disorder causing a person to experience "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07 (2000). According to Plaintiff, the ALJ's failure to consider this disorder in evaluating her credibility was error and requires remand.

An ALJ "cannot ignore altogether a claimant's subjective complaints of pain," *Bowling,* 36 F.3d at 438, but when a claimant's statements concerning the intensity, persistence or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). In this case, the ALJ made the following observations:

> [T]he degree of symptoms and limitations alleged by the claimant due to pain is not consistent with the objective medical evidence regarding these impairments, or her functional ability, including her statements about her activities. She testified that she does little or no cleaning. However, she told her therapist at Weems Community Mental Health Center that cleaning and organizing her home helps her depression. She also testified that she has partial custody of a 10-year-old little boy who plays peewee football. There is little or no mention of her caring for him in the medical records. The record also does not demonstrate clearly that she has the significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflex abnormalities that are associated with intense and disabling pain. In a follow up examination in March 2014, her physician reported that the claimant's motor and sensory function was grossly within

    normal limits. Additionally, the medical records do not demonstrate her claims of extremely limited functional capacity. There is no clear and persuasive evidence regarding the poor use of her extremities. Further, although the claimant does have mental impairments, treatment notes indicate her condition is generally stable during periods of compliance with medication despite some substance abuse issues. Given these findings, the undersigned cannot conclude that the claimant is entirely disabled under the guidelines of Social Security Ruling 96-7p and CFR 404.1529, 416.929.[8]

Plaintiff does not deny the lack of objective medical evidence, but asserts that the ALJ failed to consider whether the discrepancies between the objective medical evidence and her subjective complaints could be attributed to her somatoform disorder.

    Plaintiff appears to rest her argument on the ALJ's decision to assign partial weight to the state agency consultant's opinion, which listed "somatoform disorder" among Plaintiff conditions on the Psychiatric Technique Form. The ALJ found the opinion "relie[d] heavily on subjective reports and clinical presentation, which [were] not well corroborated by mostly normal objective mental status exam findings documented throughout the record." Courts have cautioned that "an ALJ may not find that a claimant with somatoform disorder lacks credibility solely because the claimant's self-reporting of symptoms is not supported by objective medical data; that disparity itself is symptomatic of somatoform disorder, which '<u>causes</u> [individuals] to exaggerate [their] physical problems in [their] mind[s] beyond what the medical data indicate[s].'" *Hamman v. Berryhill*, No. 16-1216, 2017 WL 729115, at *2 (8th Cir. Feb. 24, 2017) (quoting *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989)).[9]

---

[8] ECF No. 8, pp. 24-25.

[9] ECF No. 8, p. 23.

However, "[a] somatoform diagnosis does not automatically preclude an ALJ from making an adverse credibility determination." *Weidman v. Colvin,* 164 F.Supp.3d 650, 664 (M.D. Pa., 2015). Courts considering the relationship between somatoform disorder and an ALJ's credibility determination have held that an ALJ must make an express finding that a claimant is not credible before rejecting a claimant's subjective complaints. *Easter*, 867 F.2d at 1131. An ALJ's decision which "considers, but for good cause expressly discredits, a claimant's complaints of disabling pain, even in cases involving somatoform disorder" will not be disturbed. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

In this case, the ALJ based her credibility determination not only on the lack of objective medical evidence, but on the record as whole. The ALJ expressly found that Plaintiff's complaints were inconsistent with her functional ability and her reported daily activities. Further, the Court notes that the somatoform diagnosis was made by a non-examining physician whose findings were deemed excessive compared to the claimant's own testimony by the ALJ. Substantial evidence supports the ALJ's determination that Plaintiff's complaints were not credible to the extent alleged, and the undersigned finds no reason to disturb the ALJ's decision.

### 3.

Next, Plaintiff asserts the ALJ erred in finding that she has the residual functional capacity to perform her past relevant work as an assembly worker because its reasoning and manipulative requirements as outlined in the Dictionary of Occupational Titles ("DOT") exceed her mental, reaching, and handling limitations. U.S. Dep't of Labor,

*Dictionary of Occupational Titles*, App. C III (4th ed. 1991), 1991 WL 688702.  The law is well-settled on two fronts:  A claimant has the threshold burden of demonstrating that she cannot perform her past relevant work, *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990), and an ALJ's hypothetical need only "reasonably incorporate the disabilities and limitations recognized by the ALJ."  *Dise v. Colvin*, 630 F. App'x 322, 326 (5th Cir. 2002) (internal quotations marks and citation omitted).

As noted, substantial evidence as described herein supports the ALJ's decision to exclude reaching and handling limitations from Plaintiff's residual functional capacity assessment.  The examining and reviewing physicians of record did not include limitations to this effect in their assessments, and Plaintiff's daily activities undermined her claims that these limitations would preclude her from returning to work.  There was no error in accounting for only those limitations for which there was credible and substantial evidentiary support.

As to her mental impairments, Plaintiff's exclusive reliance on DOT reasoning levels is misplaced.  She contends that the level two reasoning required for an assembly worker conflicts with the ALJ's prescribed limitation because only jobs classified as Reasoning Level 1 can correspond with her residual functional capacity limitation to simple routine tasks. A Reasoning Level of 1 requires claimants to "[a]pply commonsense understanding to carry out simple one-or two-step instructions.  Deal with standardized situations encountered on the job." DOT Appendix C, 1991 WL 688702.  In comparison, a Reasoning Level of 2 requires employees to "[a]pply commonsense

11

understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

Although the Commissioner may take administrative notice of reliable job information available from the DOT, the ALJ is not bound by DOT classifications. 20 C.F.R. § 404.1566(d). Unlike the DOT, which gives only general descriptions of job duties, a "vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion as to whether the claimant can perform the specific job." *Fields v. Bowen,* 805 F.2d 1168, 1170-71 (5th Cir. 1986). Accordingly, even if the vocational expert's testimony differs from the DOT, the testimony may constitute substantial evidence upon which the ALJ can rely. *Id.*

In this case, the ALJ was entitled to rely on the vocational expert's testimony that a limitation to simple routine work would not preclude Plaintiff from returning to work as an assembly worker. Multiple courts have held that level two reasoning is not inconsistent with a limitation to simple routine work, and the record indicates that Plaintiff could "follow directions and sustain tasks (cognitively)" despite her pain and substance abuse issues. *See Temple v. Callahan,* 114 F.3d 1195, 1195 (9th Cir. 1997) ("[W]ork that requires 'commonsense understanding' is simple. Work that requires 'uninvolved written or oral instructions' is simple and routine."); *see also Charles v. Astrue,* No. 07–1172, 2008 WL 4003651, *4 –*5 (W.D. La. Aug.7, 2008); *Money v.*

*Barnhart*, 91 F. App'x 210, 215 (3rd Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that [claimant's] work be simple, routine and repetitive.").[10]

Even if the Court were to find that the ALJ erred in determining that Plaintiff could return to her past relevant work at step four, substantial evidence supports the ALJ's alternative finding that she could perform other work at step-five of the sequential evaluation.

### 4.

At step five, the ALJ found that Plaintiff could perform work as a storage rental clerk, officer helper, and fast-food prep/salad bar attendant. As her final point of error, Plaintiff contends that these occupations exceed her residual functional capacity as determined by the ALJ. Specifically, she contends that (1) the storage rental clerk job requires a higher reasoning level than her residual functional capacity; (2) the office helper job no longer exists in the DOT and "may involve multiple duties and significant public contact" in excess of her residual functional capacity; and, (3) the fast-food prep/salad bar attendant job is semi-skilled work for which she has no transferrable skills.[11]

The Court notes first that Plaintiff failed to raise these precise issues when given the opportunity to cross-examine the vocational expert at the administrative hearing, depriving the ALJ of the opportunity to address and explore them. *Jasso v. Barnhart*, 102 F. App'x 877, 878 (5th Cir. 2004). She should now not be permitted to raise them as

---

[10] ECF No. 8, pp. 362-65.

[11] ECF No. 11, p, 17.

reversible error when they were not "deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel*, 230 F.3d at 145–147 (5th Cir. 2000).

Second, although Plaintiff contends these jobs are inconsistent with her residual functional capacity as determined by the ALJ, she continues to assert that reaching and manipulative limitations would preclude her from performing them. The ALJ was not required to include limitations she rejected in her hypothetical to the vocational expert.

Third, Plaintiff attaches an exhibit of job descriptions from three vocational sources to support her claim: (1) the Dictionary of Occupational Titles; (2) Job Browser Pro by SkillTRAN – a commercial computer software program that compiles job data and other information; and, (3) the Occupational Information Network ("O*NET") – a comprehensive database system that collects, organizes, describes and disseminates data on occupation characteristics and worker attributes under the leadership of the U.S. Department of Labor.[12] Because this Court's review is limited to the administrative record before the ALJ, the undersigned questions whether vocational information from SkillTRAN and O*NET, should be considered in determining whether substantial evidence supports the ALJ's decision. *See Vandevoort v. Berryhill*, No. 3:16-CV-05493-DWC, 2017 WL 413203, at *9 (W.D. Wash., Jan. 31, 2017) (rejecting appendices

---

[12] *See* http://www.occupationalinfo.com/onet/about.html; http://www.doleta.gov/programs/onet/; http://www.skilltran.com/. The undersigned is mindful that some courts have suggested that the Dictionary of Occupational Titles is obsolete and has been superseded by O*NET. *See Cunningham v. Astrue*, 360 F. App'x 606, 616 (6th Cir. 2010); *Horsley v. Comm'r of Soc. Sec.*, No. 1:11-CV-703, 2013 WL 980315 (S.D. Ohio, Mar. 13, 2013). However, the Social Security Administration continues to use the DOT. *See Ricard v. Astrue*, 1:09–0008, 2009 WL 5031317, *9 (M.D. Tenn. Dec.14, 2009); Social Security Ruling 00-4p (requiring that vocational expert testimony be consistent with the DOT).

attached to appellate briefs from SkillTRAN as improper under 42 U.S.C. 405(g) because claimant failed to show appendices constituted new, material evidence and good cause); *see also Garnett v. Barnhart*, 162 F. App'x 301, 304 (5th Cir. 2006).

The vocational expert conducted her evaluation using the DOT, and was not asked to consider these sources on cross-examination. To show preference on appeal to "classifications authored by SkillTRAN [or O*NET] over the testimony of the [v]ocational [e]xpert would clearly be 'deciding the facts anew or re-weighing the evidence. . . .'" *Dortch v. Colvin*, No. 1:15-00229-N, 2016 WL 4414807, at *4 (S.D. Ala., Aug. 17, 2016) (citation omitted). Even if the Court were to consider the post-hearing evidence, deference is given to the DOT; of the three sources, it is the only publication the Commissioner is expressly required to take administrative notice of under the regulations. 20 C.F.R. § 404.1566(d); 20 C.F.R. § 416.966(d). However, even when the testimony differs from the published job data, a vocational expert's testimony constitutes substantial evidence upon which the ALJ can rely to satisfy the Commissioner's burden at the fifth step of the sequential evaluation. *Carey*, 230 F.3d at 145–47. In this case, the ALJ was entitled to rely on the vocational expert's unchallenged testimony that Plaintiff could perform the alternative work. *Giles v. Astrue,* 433 F.App'x 241, 251 (5th Cir. 2011).

Plaintiff claims, for example, that she cannot perform the storage facility rental clerk job because the DOT classifies it as requiring level 3 reasoning, and SkillTRAN indicates that a temperament of "dealing with people beyond giving and receiving instructions" is required. As the Commissioner argues, Plaintiff fails to explain how

15

"dealing with people" makes the job incompatible with her limitation of occasional interaction with the public.  Even if the vocational expert's testimony was in conflict with SkillTRAN, there is no requirement that the expert's testimony comply with this source. Further, Plaintiff fails to demonstrate that a claimant limited to simple, routine work is necessarily precluded from performing jobs with level 3 reasoning.  *Dugas v. Astrue*, No. 1:07–CV–605, 2009 WL 1780121, at *6 (E.D. Tex. June 22, 2009).  Reasoning Level 3 requires an employee, in part, to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form."  DOT Appendix C, 1991 WL 688702.  The fact that instructions may be furnished in written, oral, or diagrammatic forms, does not preclude them from being simple or involving one-to-two steps.  *Pete v. Astrue*, No. 08-774, 2009 WL 3648453, at *5 (W.D. La. Nov. 3, 2009).

      Plaintiff also questions whether the office helper job still exists because the DOT has not been updated since 1991, and its correlation in O*NET is "couriers and messengers."  She notes that this job, as described by O*NET and SkillTRAN, indicates that it "may involve multiple duties and significant public contact" in excess of her residual functional capacity.  This argument is unavailing.  Plaintiff does not contend that this job, as described by the DOT, exceeds her residual functional capacity *as determined by the ALJ*.  Nor does she submit any evidence to counter the vocational expert's testimony that there are 151,000 such jobs in the national economy.[13]

---

[13] ECF No. 11, p. 17; ECF No. 8, p. 101.

Lastly, Plaintiff claims that she cannot perform work as a fast-food prep/salad bar attendant because, *inter alia*, the DOT classifies the work as semi-skilled, and the ALJ failed to find that she has transferrable skills.[14]  Even if the Court were to find this discrepancy eliminated this job from the occupations that Plaintiff could perform, substantial evidence supports the ALJ's finding at step-five.  *Burton v. Social Sec. Admin*, No. 13-661, 2014 WL 775616 (5th Cir. Feb. 25, 2014).  "Both the regulations and case law make clear, [ ], that it is the number of existing *job positions,* and not the number of occupations, that the ALJ must consider in deciding whether there is a significant number of jobs."  *Rodriguez v. Astrue*, No. 11 Civ. 6977 PAC-DF, 2013 WL 3753411, at *13 (S.D.N.Y., July 17, 2013); 20 C.F.R. § 404.1566(b).  In addition to her past relevant work, the vocational expert identified a cumulative total of 524,000 jobs in the national economy that Plaintiff could perform if the fast-food prep/salad bar attendant job is eliminated from consideration.  This constitutes a significant number to sustain the Commissioner's burden at step five.

For all the above reasons, it is the opinion of the undersigned United States Magistrate Judge that Plaintiff's motion should be denied; that Defendant's Motion for Order Affirming the Commissioner should be granted; that Plaintiff's appeal should be

---

[14] The record reflects that the vocational expert testified that she believed this job should have an SVP of 2 at the administrative hearing, but the ALJ indicated that the job had an SVP of 3 in her decision.  While Plaintiff cites that as evidence that the ALJ rejected the vocational expert's opinion in this regard, the Commissioner suggests that the ALJ was merely retyping what she found in the DOT and Plaintiff's claim is speculation.  Because substantial evidence supports the ALJ's finding that Plaintiff can perform other work in significant numbers in the economy, the undersigned need not address this issue.

dismissed with prejudice; and, that Final Judgment in favor of the Commissioner should be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully Submitted on June 19, 2017.

s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE
